The Honorable Kymberly K. Evanson

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GLOBAL EQUIPMENT COMPANY, INC.,

                                Plaintiff,

        v.

GLOBAL STORAGE EQUIPMENT
MANUFACTURER LIMITED, et al.,

                                Defendants.

No. C25-1269-KKE

ORDER GRANTING PLAINTIFF'S
MOTION FOR DEFAULT
JUDGMENT AND PLAINTIFF'S
MOTION TO SEAL

Plaintiff Global Equipment Company, Inc., filed this action in July 2025, accusing Defendants Global Storage Equipment Manufacturers Limited, Certified Warehouse Equipment Inc., and All Lift Warehouse Solutions Inc. of past and ongoing infringement of Plaintiff's registered trademarks in connection with industrial equipment and supplies and related goods and services. Dkt. No. 1 at 2. More specifically, Plaintiff argues that Defendants have been selling industrial equipment and supplies and related goods and services using names and websites that "mimic [Plaintiff's] commercial presentation and identity. These unauthorized sales create consumer confusion and threaten to erode the goodwill [Plaintiff] has built through decades of continuous nationwide use." Dkt. No. 8 at 7.

After Defendants failed to respond to the complaint or Plaintiff's motion for preliminary

injunction, the Court granted the motion for preliminary injunction and entered an order of default.  Dkt. Nos. 19, 20.  Plaintiff then filed a motion for default judgment, as well as a motion to seal billing records submitted in support of its request for an award of attorney's fees.  Dkt. Nos. 21, 22.

Because Plaintiff is entitled to a default judgment, as explained herein, the Court will grant that motion.  And because Plaintiff has shown compelling reasons to maintain its billing records under seal, the Court will also grant its motion to seal.

## I.    ANALYSIS

### A.    The Court Has Jurisdiction over the Subject Matter and the Parties.

Before entering default judgment, the Court must confirm that it has both subject matter and personal jurisdiction.  *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties.").

The Court has subject-matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a)–(b), and supplemental jurisdiction under 28 U.S.C. § 1367(a).  The Court has personal jurisdiction over each Defendant, which transacted business and committed acts of infringement in this District after being properly served.  *See* Dkt. No. 1 ¶ 24.  Venue is proper.

### B.    Legal Standards on a Motion for Default Judgment

The Court's decision to enter a default judgment is discretionary.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  The Court "ordinarily disfavor[s]" default judgment because "[c]ases should be decided upon their merits whenever reasonably possible."  *Eitel v. McCool*,

782 F.2d 1470, 1472 (9th Cir. 1986).  In considering a motion for default judgment, the Court accepts "the well-pleaded factual allegations" as true, but "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citation modified).

When considering whether to exercise its discretion to enter a default judgment, the Court may consider the following *Eitel* factors:

(1) the possibility of prejudice to the plaintiff,
(2) the merits of plaintiff's substantive claim,
(3) the sufficiency of the complaint,
(4) the sum of money at stake in the action;
(5) the possibility of a dispute concerning material facts;
(6) whether the default was due to excusable neglect, and
(7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72.

The Western District of Washington also requires a party seeking default judgment to provide "a declaration and other evidence establishing plaintiff's entitlement to a sum certain and to any nonmonetary relief sought."  Local Civil Rules W.D. Wash. LCR 55(b)(2).  "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).

## C.    Plaintiffs are Entitled to Default Judgment Against Defendants.

The Court applies the *Eitel* factors to this case and finds that they favor a default judgment for all Plaintiff's claims.

### 1.    *Possibility of Prejudice to Plaintiffs*

For the first *Eitel* factor, the Court analyzes the possibility of prejudice to Plaintiff. Prejudice exists when "the plaintiff has no recourse for recovery other than default judgment."

*Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (citation modified).

In this case, Defendants have failed to respond to or otherwise defend against Plaintiff's complaint. Without a default judgment, Plaintiff would have no recourse. Therefore, the Court finds the first *Eitel* factor favors a default judgment.

> 2.    *Sufficiency and Merits of Plaintiffs' Complaint*

The Court analyzes the second and third *Eitel* factors—the merits of Plaintiff's substantive claims and the sufficiency of the complaint—together. *See, e.g.*, *Curtis*, 33 F. Supp. 3d at 1211. For the following reasons, the Court finds that Plaintiff has alleged facts in its complaint showing that Defendants are liable on the claims asserted.

> a.    Trademark infringement: federal and common law

As noted above, Plaintiff alleges that Defendants infringed its trademarks in violation of 15 U.S.C. § 1114 as well as Washington common law. Dkt. No. 1 ¶¶ 43–50, 67–71.

To prevail on a trademark infringement claim under 15 U.S.C. § 1114, a plaintiff must show that the defendant used (1) a reproduction, counterfeit, copy or colorable imitation of the plaintiff's registered trademark; (2) without the plaintiff's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such use is likely to cause confusion, or to cause a mistake or to deceive. *Amazon.com v. Kurth*, No. 2:18-cv-00353-RAJ, 2019 WL 3426064, at *2 (W.D. Wash. July 30, 2019). As to the fifth element—the likelihood of confusion—a court tests whether the defendant's use of the plaintiff's trademark is likely to confuse a reasonably prudent consumer in the marketplace as to the origin of the product. *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129

(9th Cir. 1998).

To prevail on a trademark infringement claim for an unregistered mark or name under Washington's common law, a plaintiff must demonstrate both that (1) it owns a valid trademark or trade name and (2) the defendant's unauthorized use of the mark or name is likely to cause consumer confusion. *See Seattle Endeavors, Inc. v. Mastro*, 868 P.2d 120, 124–25 (Wash. 1994) (noting that a plaintiff "must establish the defendant has infringed on a distinctive feature of his name in a manner that tends to confuse the two businesses in the public mind").

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has sufficiently stated claims for trademark infringement under federal law and Washington common law. Plaintiff alleges that Defendants have intentionally used marks that are identical or similar to Plaintiff's registered marks in marketing the exact same goods and services as Plaintiff, which creates a "misleading association with Plaintiff's branding" "by mimicking the appearance and commercial impression of [Plaintiff's] longstanding and distinctive brand identity." Dkt. No. 1 ¶¶ 30–36. Therefore, the Court finds the second and third *Eitel* factors favor a default judgment for Plaintiff on its infringement claims.

b. Unfair competition and false designation of origin

To prevail on a claim for false designation of origin under the Lanham Act (15 U.S.C. § 1125(a)(1)), "a plaintiff must prove that the defendant (1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015).

Accepting the allegations in Plaintiff's complaint as true, the Court finds that Plaintiff has shown that Defendants are liable on the claim for false designation of origin. Plaintiff alleges that Defendants have intentionally used marks that are identical or similar to Plaintiff's marks in marketing the exact same goods and services as Plaintiff, which creates a "misleading association with Plaintiff's branding" "by mimicking the appearance and commercial impression of [Plaintiff's] longstanding and distinctive brand identity." Dkt. No. 1 ¶¶ 30–36. For these reasons, the second and third *Eitel* factors favor a default judgment for Plaintiff on its false designation of origin claim.

c.   Anti-Cybersquatting Consumer Protection Act

Plaintiff next brings a claim for cybersquatting under part of the Lanham Act known as the Anti-Cybersquatting Consumer Protection Act ("ACPA"). 15 U.S.C. § 1125(d)(1). This claim has three elements: "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted with bad faith intent to profit from that mark." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1219 (9th Cir. 2012) (citation modified).

Accepting the allegations in Plaintiff's complaint as true, the Court finds that Plaintiff has shown that Defendants are liable on the claim for cybersquatting. Plaintiff alleges that Defendants' multiple domain names "wholly incorporate" Plaintiff's registered marks and tradename, and Plaintiff alleges that Defendants had notice of Plaintiff's marks and intended to divert consumers from Plaintiff's online location to their own online locations for commercial gain. Dkt. No. 1 ¶¶ 60–61. For these reasons, the second and third *Eitel* factors favor a default judgment for Plaintiff on its cybersquatting claim.

d.  <u>Washington Consumer Protection Act</u>

"To state a claim under the CPA, a plaintiff must allege: '(1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation.'"  *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 976 (9th Cir. 2016) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986)).  "Absent unusual circumstances, the analysis of a CPA claim will follow that of the trademark infringement and unfair competition claims; it will turn on the likelihood of confusion regarding a protectable mark."  *Safeworks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d 1181, 1192 (W.D. Wash. 2010).

For the same reasons the Court has found that Plaintiff has sufficiently stated its trademark infringement and unfair competition claims, and alleged that Defendants' use of identical or similar marks is misleading or confusing, the Court finds that Plaintiffs have stated a claim for violation of the CPA as well.  Therefore, the Court finds that the second and third *Eitel* factors favor a default judgment for Plaintiff on its CPA claim.

In sum, the Court finds that the second and third *Eitel* factors favor a default judgment for Plaintiff on all claims raised in the complaint.

*3.      The Sum of Money at Stake*

For the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the defendant's conduct.  *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002).  The Court also assesses whether the amount of monetary damage requested is proportional to the harm caused by the defendant.  *See Curtis*, 33 F. Supp. 3d at 1212.

In this case, Plaintiff alleges that Defendants' willful infringement of its trademarks entitles it to up to $2 million in statutory damages per mark.  *See* Dkt. No. 21 at 4 (citing 15 U.S.C. § 1117(c)(2)).  The amount Plaintiff seeks to recover is substantial, but proportional to the scale of the misconduct alleged, and the Court finds that this factor therefore favors entry of a default judgment.

>    4.    *Possibility of Dispute over Material Facts*

For the fifth *Eitel* factor, the Court considers the possibility of dispute concerning material in facts.  *Eitel*, 782 F.2d at 1471–72.  Upon default, a plaintiff's factual allegations of the complaint will be taken as true.  *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).  Because Defendants failed to appear or otherwise respond, they have failed to rebut Plaintiff's allegations or evidence provided to support their claims.  Therefore, given that no dispute of material facts is apparent, the Court finds that the fifth *Eitel* factor favors entry of a default judgment.

>    5.    *Possibility of Excusable Neglect*

For the sixth *Eitel* factor, the Court assesses whether the defendant's default was due to excusable neglect.  Here, the Court granted Plaintiff's motion for alternative service and allowed Plaintiff to serve Defendants by email.  *See* Dkt. No. 11.  Consistent with the Court's order, Plaintiff subsequently provided an affidavit of service and confirmed that it received no error message or bounce-back; instead, Plaintiff received an email response from Defendants.  *See* Dkt. Nos. 12, 13.  Because Defendants received notice of this action and yet made no apparent effort to respond to the complaint or otherwise defend, the Court finds that the sixth *Eitel* factor favors entry of a default judgment.  *See Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp.

ORDER GRANTING PLAINTIFF'S MOTION FOR
DEFAULT JUDGMENT - 8

2d 916, 922 (C.D. Cal. 2010).

6.      *Policy in Favor of Decision on the Merits*

For the seventh *Eitel* factor, the Court addresses the strong policy preference in favor of resolution of claims on their merits.  *See Eitel*, 782 F.2d at 1472 ("Cases should be decided upon their merits whenever reasonably possible.").  However, a defendant's "failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177.

Thus, although the Court's preference for resolving issues on their merits weighs against entry of a default judgment, this factor is outweighed by the other *Eitel* factors, as summarized here.  Accordingly, the Court finds that Plaintiff's motion for default judgment should be granted.

**D.     Plaintiffs Are Entitled to Statutory Damages.**

Having found that Plaintiffs are entitled to entry of a default judgment, the Court now turns to consider the relief requested by Plaintiffs.

1.      *Statutory Damages*

The Lanham Act provides for three types of remedies in infringement cases.  *See Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1007 (9th Cir. 2023).

> When a plaintiff establishes a violation of any registered mark, subsection (a) makes available to the plaintiff, subject to equitable considerations, "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." [15 U.S.C.] § 1117(a).  For intentional violations, subsection (b) provides for "three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee" and further specifies that "the court may award prejudgment interest on such amount[.]"  § 1117(b).  Subsection (c) allows a plaintiff to elect, "instead of actual damages and profits under subsection (a), an award of statutory damages" between $1,000 and $200,000 per counterfeit mark, or for a willful violation, up to $2,000,000 per counterfeit

mark. § 1117(c).

*Id.*  A willful trademark infringement occurs when "the defendant's actions are 'willfully calculated to exploit the advantage of an established mark.'"  *DC Comics v. Towle*, 802 F.3d 1012, 1026 (9th Cir. 2015) (quoting *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993)).  As the Court accepts all factual allegations as true when resolving a motion for default judgment, the Court accepts a plaintiff's allegation of a defendant's willful infringement.  *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008).

Plaintiff alleges in the complaint that Defendants acted willfully by intentionally causing customer confusion regarding the origin of the products sold.  *See* Dkt. No. 1 ¶¶ 21–47.  The allegations of willfulness are corroborated by Defendant Global Storage Equipment's email confirming its intent to continue using the infringing marks despite the notice of infringement.  *See* Dkt. No. 13-2.

With respect to this willful infringement, Plaintiff elects to recover statutory damages, specifically $2 million for each of the two marks infringed, or $4 million total.  Dkt. No. 21 at 4–5.

To calculate statutory damages for willful infringement, courts consider the need to: (1) "compensate" the plaintiffs for the damage the defendant's actions caused; (2) "deter" the defendants from violating the trademarks; and (3) "punish" the defendants for willfully violating the trademarks.  *See Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1124 (C.D. Cal. 2007).  The Court finds that the statutory damages requested by Plaintiff will compensate it for the harm caused by Defendants' conduct, punish Defendants for that conduct, and deter it in the future.  Accordingly, the Court will award Plaintiff the statutory damages it requests.

1   **E.     Plaintiff Is Entitled to a Permanent Injunction.**

2          Plaintiff requests that the Court enter an order enjoining Defendants from using in

3   commerce Plaintiff's marks, or variations or colorable imitations of Plaintiff's marks; requiring

4   Defendants to transfer all domain names that include the word "Global" to Plaintiff; restraining

5   Defendants from engaging in conduct intended to mislead or confuse consumers via

6   advertisements as specified in the complaint or in similar advertisements; and restraining

7   Defendants from importing into the United States any products bearing or sold under Plaintiff's

8   marks or any mark confusingly similar to those marks, including through any third party,

9   affiliate, distributor, or agent.  Dkt. No. 1 at 21; Dkt. No. 21 at 31.

10

11         Under 15 U.S.C. § 1116(a), district courts have authority to issue injunctions to prevent

12  violations of the rights of a trademark owner.  To obtain a permanent injunction, a plaintiff must

13  show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as

14  monetary damages, are inadequate to compensate for that injury; (3) that considering the

15  balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

16  (4) that the public interest would not be disserved by a permanent injunction."  *Olson Kundig,*

17  *Inc. v. 12th Avenue Iron, Inc.*, No. C22-0825JLR, 2023 WL 3269759, at *13 (W.D. Wash. May

18  5, 2023) (citing *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

19

20         Plaintiff's complaint contains allegations satisfying the first two requirements.  *See* Dkt.

21  No. 1 ¶ 45 (alleging irreparable damage to Plaintiff if it "loses the ability to control the use of

22  its mark, reputation, and goodwill through [Defendants'] false and unauthorized use of its

23  trademark" and that such damage cannot be compensated with money damages).  The Court

24  also finds that the balance of hardships tips in Plaintiff's favor because "Plaintiff will lose

25

26

ORDER GRANTING PLAINTIFF'S MOTION FOR
DEFAULT JUDGMENT - 11

profits and goodwill without an injunction, while an injunction will only proscribe Defendants'

infringing activities." *Blumenthal Distrib., Inc. v. Comoch Inc.*, 652 F. Supp. 3d 1117, 1135

(C.D. Cal. 2023) (citation modified).  Likewise, an injunction serves the public interest because

Defendants' unauthorized "concurrent use" of Plaintiff's mark would cause confusion to the

public.  *Id.* (quoting *AT&T Corp. v. Vision One SecuritySystems*, No. 95-0565-IEG (BTM),

1995 WL 476251, at *7 (S.D. Cal. July 27, 1995)).   Accordingly, the Court finds that Plaintiff

is entitled to the permanent injunction requested in complaint.[1]

## F.    Plaintiff Is Entitled to Recover Reasonable Attorney's Fees and Costs.

Washington's CPA authorizes an award of attorney's fees and costs to prevailing parties

(WASH. REV. CODE § 19.86.090), while the Lanham Act authorizes an award of attorney's fees

and costs to prevailing trademark plaintiffs in "exceptional cases."[2]  15 U.S.C. § 1117(a).  In

this context, a "case is exceptional if the defendant has acted in bad faith or with willful and

deliberate conduct." *Discovery Comm'ns, Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282,

1291 (C.D. Cal. 2001).   "Additionally, a case may be considered exceptional where the

defendants disregard the proceedings and do not appear." *Id.*

Here, Plaintiff's complaint alleges that Defendants committed "infringement with full

knowledge of Plaintiff's rights in the GLOBAL Marks, and have willfully, deliberately, and

---

[1] Plaintiff's proposed order references a remedy not requested in the complaint (or referenced in the motion for default judgment), specifically destruction/impoundment.  Compare Dkt. No. 1 at 21–22 *with* Dkt. No. 21 at 8–9.  Because this remedy was not requested in the complaint, the Court does not include this section in the default judgment.  *See* Fed. R. Civ. P. 54(c).

[2] Although Plaintiff's common law trademark infringement claim is not covered by either of these statutory authorizations, because it entirely overlaps with Plaintiff's federal infringement claim as evidenced by the Court's analysis of the claims together in this order, the Court finds no need to apportion fees.  *See, e.g.*, *Olson Kundig*, 2023 WL 3269759, at *10 ("Given the overlapping evidence and legal analysis, apportioning work between the Lanham Act claim and the common law trademark infringement claim would be meaningless.").

1    maliciously engaged in the described acts with an intent to injure Plaintiff and to deceive the

2    public." Dkt. No. 1 ¶ 47. Moreover, Defendants have not appeared in this action. Accordingly,

3    the Court finds that this case is "exceptional" for purposes of attorney's fees.

4    Plaintiff's motion requests an award of $95,884.00[3] in fees and $1,151.41 in costs for

5    work performed through the end of September 2025. Dkt. No. 21 at 6; Dkt. No. 25-2 (costs).

6    The Court finds that both the hours expended (as documented by Plaintiff in the declarations

7    submitted along with the motion for default judgment) and the variable hourly rates (some

8    discounted) charged by the professionals managing this case are reasonable. *See* Dkt. Nos. 25,

9    26. Therefore, a fee award of $93,183.00 and a cost award of $1,151.41 are appropriate. *See,*

10   *e.g.*, *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (explaining that a

11   court determines a reasonable fee award by first calculating the lodestar, which represents the

12   product of a reasonable number of hours expended and a reasonable hourly rate).

13   **G.    Plaintiff's Motion to Seal Is Granted.**

14   Plaintiff filed a motion to seal a declaration submitted in support of its request for an

15   award of attorney's fees and costs, which identifies billing rates not generally available to the

16   public and specifically negotiated for this case. *See* Dkt. Nos. 22, 23.

17   "Historically, courts have recognized a 'general right to inspect and copy public records

18   and documents, including judicial records and documents.'" *Kamakana v. City & Cnty. of*

19   *Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435

20   U.S. 587, 597 & n.7 (1978)); *see also* Local Rule W.D. Wash LCR 5(g) ("There is a strong

---

[3] Plaintiff's motion requests this amount (Dkt. No. 21 at 6); Plaintiff's proposed order requests $93,183.00 in fees (Dkt. No. 21-2 at 3). Plaintiff's documentation indicates that the fee award requested is $80,673.00 (Dkt. No. 26 ¶ 22) plus $12,510.00 (Dkt. No. 25 ¶ 3), which totals $93,183.00.

ORDER GRANTING PLAINTIFF'S MOTION FOR
DEFAULT JUDGMENT - 13

presumption of public access to the court's files."). The Court treats judicial records attached to dispositive motions differently from records attached to non-dispositive motions:

> Those who seek to maintain the secrecy of documents attached to dispositive motions must meet the high threshold of showing that "compelling reasons" support secrecy. A "good cause" showing under Rule 26(c) will suffice to keep sealed records attached to non-dispositive motions.

*Kamakana*, 447 F.3d at 1180. "In general, 'compelling reasons' sufficient to ... justify sealing court records exist when such 'court files might ... become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (quoting *Nixon*, 435 U.S. at 598). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id*.

Here, because a motion for default judgment is a dispositive motion, Plaintiff must show a "compelling reason" to support its motion to seal information submitted in support of that dispositive motion. The Court finds that Plaintiff has done so here. Plaintiff contends that if counsel's firm's proprietary business practices—namely negotiating billing rates and client-specific accommodations—are revealed to the public, counsel's firm "will suffer from a competitive disadvantage and an interruption in client relationships" because public disclosure would discourage candid fee negotiations and invite rate-shopping by competitors. Dkt. No. 22 at 3. Courts have accepted this line of reasoning as a "compelling" justification for sealing. *See, e.g.*, *Clark v. InComm Fin. Servs., Inc.*, No. EDCV 22-1839 JGB (SHKx), 2024 WL 4744041, at *3 (C.D. Cal. Sep. 13, 2024) (citing *Monster Energy Co. v. Vital Pharms., Inc.*, No. EDCV 18-1882 JGB (SHKx), 2023 WL 8168854, at *2 n.1 (C.D. Cal. Oct. 6, 2023), *aff'd*, 489 F. App'x 175 (9th Cir. 2012); *E&J Gallo Winery v. Proximo Spirits, Inc.*, No. 1:10-cv-

0411 LJO JLT, 2012 WL 1645190, at *1 (E.D. Cal. May 8, 2012)).  Accordingly, the Court will grant Plaintiff's motion to seal.

## II.    CONCLUSION

For these reasons, the Court GRANTS Plaintiff's motion for default judgment (Dkt. No. 21) and motion to seal (Dkt. No. 22).  Judgment shall be entered in favor of Plaintiff and against Defendants as follows:

**A.    Liability**

1.  Defendants are liable to Plaintiff for: (a) trademark infringement and counterfeiting under 15 U.S.C. § 1114; (b) false designation of origin/unfair competition under 15 U.S.C. § 1125(a); (c) cybersquatting under 15 U.S.C. § 1125(d); (d) violation of the Washington Consumer Protection Act (RCW § 19.86.020 *et seq.*); and (e) common law trademark infringement.

**B.    Monetary Relief**

2.  *Statutory Damages for Counterfeiting.* Given Defendants' willful use of counterfeit marks, the Court awards statutory damages under 15 U.S.C. § 1117(c)(2) in the amount of $2,000,000 per counterfeit mark for two counterfeit marks (GLOBAL word and GLOBAL design), for a total of $4,000,000, for which Defendants are jointly and severally liable.

3.  *Costs and Attorney's Fees.* This is an "exceptional case" under 15 U.S.C. § 1117(a). Plaintiff is entitled to recover its reasonable attorney's fees and taxable costs, which currently amount to $93,183.00 and $1,151.41 (respectively) through September 30, 2025. No later than December 5, 2025, Plaintiff shall file a motion for an award of

any additional fees and costs incurred since September 30, 2025, with supporting documentation in accordance with Federal Rule of Civil Procedure 54(d), Local Rules W.D. Wash. LCR 54, and controlling precedent.

4. *Post-Judgment Interest.* Post-judgment interest shall accrue at the statutory rate under 28 U.S.C. § 1961 from the date of entry of judgment until paid in full.

## C. Permanent Injunction

5. Defendants, and their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Order, are permanently ENJOINED and RESTRAINED from:

a. Using in commerce any reproduction, counterfeit, copy, simulation, confusion-causing variant, or colorable imitation of the GLOBAL Marks listed in **Table 1** below, (including the GLOBAL word and design marks), or any other mark likely to cause confusion with Plaintiff's GLOBAL brand;

**Table 1**

| Trademark | Registration/Serial Number | Registration/Filing Date |
|---|---|---|
|  | 6,158,563 | Sept. 22, 2020 |
|  | 6,175,534 | Oct. 13, 2020 |
|  | 6,951,434 | Jan. 10, 2023 |

ORDER GRANTING PLAINTIFF'S MOTION FOR
DEFAULT JUDGMENT - 16

| | | |
|---|---|---|
| GLOBAL INDUSTRIAL (logo) | **6,558,859** | **Nov. 16, 2021** |
| GLOBAL INDUSTRIAL | **6,646,015** | **Feb. 15, 2022** |
| GLOBAL (logo) | **5,332,540** | **Nov. 14, 2017** |
| GLOBAL INDUSTRIAL.COM | **2,997,550** | **Sept. 20, 2005** |
| GLOBAL (logo) | **2,486,406** | **Sept. 11, 2001** |
| GLOBAL (logo) | **2,418,489** | **Jan. 9, 2001** |
| GLOBAL globalindustrial.com (logo) | **4,596,418** | **Sept. 2, 2014** |
| GLOBAL globalindustrial.com (logo) | **4,675,514** | **Jan. 20, 2015** |
| GLOBAL globalindustrial.com (logo) | **4,805,310** | **Sept. 1, 2015** |
| GLOBAL (logo) | **5,303,280** | **Oct. 03, 2017** |
| GLOBAL (logo) | **5,683,237** | **Feb. 26, 2019** |
| GLOBAL (logo) | **5,694,979** | **Mar. 12, 2019** |
| GLOBAL (logo) | **5,797,953** | **Jul. 09, 2019** |
| GLOBAL INDUSTRIAL | **5,900,767** | **Nov. 05, 2019** |
| GLOBAL INDUSTRIAL | **5,958,047** | **Jan. 07, 2020** |

| | | |
|---|---|---|
| GLOBAL INDUSTRIAL | **5,972,455** | **Jan. 28, 2020** |
|  | **6,166,551** | **Oct. 06, 2020** |
| GLOBAL INDUSTRIAL | **6,213,098** | **Dec. 01, 2020** |
|  | **6,279,225** | **Feb. 23, 2021** |
| GLOBAL INDUSTRIAL | **6,359,876** | **May 25, 2021** |
| GLOBAL INDUSTRIAL | **6,384,762** | **Jun. 15, 2021** |
|  | **6,389,615** | **Jun. 15, 2021** |
| GLOBAL INDUSTRIAL | **6,646,322** | **Feb. 15, 2022** |
| GLOBAL INDUSTRIAL INSIDER | **6,676,092** | **Mar. 22, 2022** |
|  | **6,817,550** | **Aug. 16, 2022** |
|  | **7,020,336** | **Apr. 04, 2023** |
|  | **7,081,709** | **Jun. 13, 2023** |
| GLOBAL INDUSTRIAL | **7,096,599** | **Jul. 04, 2023** |
|  | **7,287,927** | **Jan. 23, 2024** |
|  | **7,328,526** | **Mar. 12, 2024** |
| GLOBAL INDUSTRIAL | **7,523,788** | **Oct. 01, 2024** |
| GLOBALPURE | **7,819,656** | **Jun. 03, 2025** |

| | | |
|---|---|---|
| GLOBAL INDUSTRIAL Healthcare Solutions | **97413820** | **May 17, 2022** |
| GLOBAL INDUSTRIAL EXCLUSIVE BRANDS | **97472179** | **Jun. 23, 2022** |
| GLOBAL INDUSTRIAL Exclusive Brands | **97472589** | **Jun. 23, 2022** |
| GLOBAL INDUSTRIAL | **Ser. No. 97669926** **Reg. No. 7844881** | **Filing Date: Nov. 09, 2022** **Reg. Date: Jun. 24, 2025** |
| GLOBAL INDUSTRIAL | **97670034** | **Nov. 09, 2022** |
| GLOBALPURE | **97670068** | **Nov. 09, 2022** |
| GLOBAL INDUSTRIAL Racing | **97683224** | **Nov. 18, 2022** |
| GLOBAL INDUSTRIAL RACING | **97683469** | **Nov. 18, 2022** |
| GLOBAL INDUSTRIAL ADVANTAGE | **98228680** | **Oct. 18, 2023** |
| GLOBAL INDUSTRIAL Advantage | **98228692** | **Oct. 18, 2023** |
| GLOBAL INDUSTRIAL Exclusive Brands | **98753183** | **Sept. 16, 2024** |

b. Manufacturing, importing, producing, distributing, advertising, marketing, offering for sale, or selling any goods or services bearing the GLOBAL

ORDER GRANTING PLAINTIFF'S MOTION FOR
DEFAULT JUDGMENT - 19

Marks or any confusingly similar designation;

    c.   Registering, owning, licensing, maintaining, operating, controlling, trafficking in, or using any domain name, social-media handle, marketplace storefront, or online identifier that contains the GLOBAL Marks or confusingly similar terms, including but not limited to the domain names identified in Plaintiff's evidentiary submissions (the "Infringing Domains");

    d. Passing off, inducing, or enabling others to pass off any product or service as being produced by, sponsored by, or affiliated with Plaintiff when that is not the case; and

    e. Assisting, aiding, or abetting any other person or entity in engaging in any of the acts set forth in subparagraphs (a)–(d).

**D.**    **Domain Name Remedies (under the ACPA)**

6.  Within 10 days of service of this Order, Defendants shall transfer to Plaintiff, without charge, all right, title, and interest in the following Infringing Domains: <http://global-racking.com/en/home.aspx>, <https://www.global-lockit.com/en/home.aspx>, <https://www.global-wmp.com/Default.aspx>, <https://www.global-allplastic.com/en/home.aspx> and <https://global-storagesolutions.com/> , including any registrar credentials necessary to effectuate transfer. If Defendants fail to do so, the domain name registrars and registries for the Infringing Domains are AUTHORIZED and DIRECTED to transfer the Infringing Domains to Plaintiff upon receipt of this Order, under 15 U.S.C. § 1125(d) and their applicable policies.

**E.      Third-Party Compliance**

8.   Any domain registrar, registry, web host, marketplace platform, payment processor, or fulfillment provider with actual notice of this Order is AUTHORIZED to comply with sections C–D, including disabling, de-listing, and transferring the Infringing Domains and removing infringing listings bearing the GLOBAL Marks.

**F.      Service; Retained Jurisdiction**

9.   Service of this Order may be made by email to Defendants' last-known email addresses used in connection with their domain registrations, websites, or sales activities, and to the abuse/legal contacts of any registrar/registry hosting the Infringing Domains. Such service constitutes sufficient notice.

10.  The Court RETAINS JURISDICTION to enforce this Judgment and Permanent Injunction, to adjudicate Plaintiff's supplemental motion for fees and costs, and to conduct any supplemental proceedings authorized by law.

DATED: November 12, 2025.

_Kymberly K. Evanson_
_____
Kymberly K. Evanson
United States District Judge